

# FILED

NOV 0 9 2017

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No.   16 CR 54 |
| | ) | |
| | ) | Violations: Title 18, United States |
| v. | ) | Code, Sections 912 and 1343 |
| | ) | |
| MARK STEVEN DIAMOND, | ) | Second Superseding Indictment |
| CYNTHIA WALLACE, | ) | Judge Robert M. Dow, Jr. |
| MATTHEW FEFFERMAN and | ) | |
| GARY THOMAS BOHN | ) | |

MAGISTRATE JUDGE MASON

## COUNT ONE

The SPECIAL JULY 2016 GRAND JURY charges:

1.     At times material to this Second Superseding Indictment:

    a.     Defendant MARK STEVEN DIAMOND was an Illinois licensed loan originator and president of OSI Financial Services, Inc. (OSI), an Illinois licensed mortgage brokerage, and of United Residential Services & Real Estate, Inc. (URS), a home repair general contractor, both of which had offices at 2355-57 N. Damen, Ave., in Chicago, Illinois;

    b.     Defendant MATTHEW FEFFERMAN was an Illinois licensed loan originator and president of Harbor Financial Group, Ltd., an Illinois licensed mortgage brokerage, and president and assistant vice president, respectively, of Marmat Enterprises, Inc., and of Holloway Lumber & Construction Company, Inc. of Indiana, dba Holloway Home Construction and Holloway Remodeling, both of which were home repair general contractors, and all three of which had offices in Calumet City, Illinois;

    c.     Defendants MARK STEVEN DIAMOND and MATTHEW FEFFERMAN, through their respective control of URS and Marmat Enterprises, managed United

Residential Enterprises, LLC (URE), in Calumet City, Illinois;

d. On or about November 20, 2003, the United States District Court for the Northern District of Illinois entered an order permanently enjoining defendant MARK STEVEN DIAMOND and OSI from, among other things, conducting any loan closing, and requiring an independent settlement agent conduct the closing for any loan defendant DIAMOND or OSI brokered;

e. On or about April 27, 2010, the Illinois Department of Financial and Professional Regulation (IDFPR) issued an order suspending defendant MARK STEVEN DIAMOND's expired loan originator registration for a period of 4 years from April 27, 2010, and revoking OSI's expired license;

f. On or about April 27, 2010, the IDFPR issued an order revoking Harbor Financial Group's residential mortgage license;

g. Defendant GARY THOMAS BOHN was an Illinois licensed loan originator employed by Mortgage Brokerage B, an Illinois licensed mortgage brokerage in Hoffman Estates and, later, in Schaumburg, Illinois;

h. Co-Schemer C was an Illinois attorney and licensed notary public;

i. Co-Schemer Forrest C. Fawcett was the president and owner of Able Title Insurance Agency, Inc., dba Able Title Company, in Chicago, Illinois;

j. A reverse mortgage loan, also known as a home equity conversion mortgage, was a type of refinance loan through which homeowners age 62 or over borrowed equity in their primary residence, which did not become due until the homeowner died. A reverse mortgage loan was available only if all borrowers were title holders and were age 62 or over;

2

k.      To be eligible for a reverse mortgage loan, the borrower was required to receive reverse mortgage counseling which explained the fees, costs and ramifications of obtaining a reverse mortgage loan. Lenders required loan applicants to provide truthful information in the application, which information was material to the lender's approval, terms and funding of the loan;

l.      Reverse mortgage loan payouts were in the form of a line of credit or lump sum, with limits on the size of the lump sum payout. Prior liens were paid off out of loan closing proceeds, so that the reverse mortgage lender received a first lien;

m.      JPMorgan Chase Bank was a financial institution the deposits of which were insured by the FDIC; and American Advisors Group, Cherry Creek Mortgage, Co., Inc., Financial Freedom Acquisition LLC, Genworth Financial Home Equity Access, Liberty Home Equity Solutions, Maverick Funding Corp., Plaza Home Mortgage, Inc., Silvergate Funding, Inc., Sun West Mortgage Co., Inc., and Urban Financial Group, Inc., were mortgage lending businesses;

n.      One Main Financial Group, formerly Springleaf Financial Services of Illinois, LLC, and Synchrony Bank made personal installment or title loans;

o.      The United States Department of Housing and Urban Development (HUD) oversaw public housing, provided grants to communities to provide affordable housing, administered the Section 8 programs and oversaw the Federal Housing Administration;

p.      The Federal Housing Administration was an agency of the United States which provided mortgage insurance to low income buyers and insured reverse mortgages;

q.      MoneyGram was in the business of transferring funds using wire transfers to and from a server in Minneapolis, Minnesota; and

3

r.        Western Union was in the business of transferring funds using wire transfers of the funds and a copy of the transaction to and from data centers in Charlotte, North Carolina or Plano, Texas.

2.        Beginning in or about 2008, and continuing until in or about April 2016, in the Northern District of Illinois, Eastern Division, and elsewhere,

MARK STEVEN DIAMOND,<br>
CYNTHIA WALLACE,<br>
MATTHEW FEFFERMAN and<br>
GARY THOMAS BOHN,

defendants herein, together with Co-Schemers C and Forrest C. Fawcett, and others, devised, intended to devise, and participated in a scheme to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts, which scheme affected financial institutions, and for the purpose of executing this scheme caused wire transmissions to be sent in interstate commerce.

3.        It was part of the scheme that defendants MARK STEVEN DIAMOND, CYNTHIA WALLACE, MATTHEW FEFFERMAN and GARY THOMAS BOHN, together with Co-Schemers C and Forrest C. Fawcett, engaged in a home repair and loan fraud scheme using URS, Marmat Enterprises, and Holloway Lumber & Construction to target elderly homeowners and lenders, including FDIC-insured financial institutions and mortgage lending businesses that made reverse mortgage loans to those elderly homeowners.

4.        It was further part of the scheme that defendants MARK STEVEN DIAMOND, CYNTHIA WALLACE, MATTHEW FEFFERMAN and GARY THOMAS BOHN, together with Co-Schemers C and Forrest C. Fawcett, fraudulently caused lenders: (1) to make loans to victims who did not sign the loan documents, did not know that they were obtaining a loan, did not know

4

the terms or amount of the loan or were not eligible to obtain a reverse mortgage loan because they had not received reverse mortgage loan counseling, and (2) to pay loan proceeds directly to defendant DIAMOND's or defendant FEFFERMAN's business entities based upon the false representation that home repair work had already been performed.

5.      It was further part of the scheme that defendants MARK STEVEN DIAMOND, CYNTHIA WALLACE, MATTHEW FEFFERMAN and GARY THOMAS BOHN targeted homeowner victims in Chicago based upon the equity in their homes; their age, which ranged from 62, the minimum necessary to qualify for a reverse mortgage loan, to as old as 97; and their relative lack of financial sophistication.

6.      It was further part of the scheme that defendant CYNTHIA WALLACE solicited homeowners to have home repairs performed by defendants MARK STEVEN DIAMOND and MATTHEW FEFFERMAN, knowing that defendant DIAMOND would make false promises to perform repair work and did not intend to perform all of the work promised.

7.      It was further part of the scheme that defendant MARK STEVEN DIAMOND falsely represented to certain homeowners that he had been sent by "the city" and that the home repairs would not cost the homeowner any money, such as by falsely promising that the repairs would be paid for through a government program, including a free Chicago porch repair program. In certain instances, defendant DIAMOND concealed from the homeowners that they were applying for reverse mortgage loans by falsely representing to the homeowners that they needed to sign certain documents to start the repair work, when, in fact, the documents defendant DIAMOND caused them to sign were related to applying for a reverse mortgage loan.

8.     It was further part of the scheme that defendants MARK STEVEN DIAMOND and MATTHEW FEFFERMAN falsely promised homeowners to make home repairs of a type and cost that were a function of the amount of equity that defendants DIAMOND, FEFFERMAN and GARY THOMAS BOHN calculated would be available in the form of a payout from a reverse mortgage loan secured by the victims' homes. The greater the equity available to the homeowner, the more repairs defendants DIAMOND and FEFFERMAN falsely promised to make and the more defendants DIAMOND and FEFFERMAN charged the victims irrespective of the actual work promised to be performed.

9.     It was further part of the scheme that, on occasions where family members were opposed to the elderly homeowner dealing with defendant MARK STEVEN DIAMOND or obtaining a reverse mortgage loan, defendant DIAMOND would return to the home to speak to the homeowner alone at a time when the opposing family members were not present in order to exert undue influence on the homeowner to agree to obtain a reverse mortgage.

10.     It was further part of the scheme that, in instances where family members and other individuals under 62 were also on title to the home, defendant MARK STEVEN DIAMOND caused the preparation of documents necessary to accomplish their removal, and falsely promised the family members that they could later be put on the title consistent with the terms of the reverse mortgage loan.

11.     It was further part of the scheme that defendant MARK STEVEN DIAMOND offered reverse mortgage loans and took loan applications from homeowners and fraudulently caused homeowners to agree to apply for and execute documents to obtain reverse mortgage loans either unwittingly or by misrepresenting the terms of the reverse mortgage loans, including by

6

falsely representing that, after the homeowners died, repayment of the reverse mortgage loan could be delayed by signing family members up for a "program" which defendant DIAMOND knew did not exist.

12. It was further part of the scheme that, to prevent homeowners from understanding the nature of the transaction and the amount of the reverse mortgage loan, defendant MARK STEVEN DIAMOND circumvented the IDFPR order suspending his expired loan originators license by acting as a loan originator and offering reverse mortgage loans and taking loan applications for loans which were then fraudulently submitted in the name of another loan originator.

13. It was further part of the scheme that defendant MATTHEW FEFFERMAN signed and caused employees of Harbor Financial Group to sign loan applications falsely representing that defendant FEFFERMAN or Harbor Financial Group employees were the loan originator of reverse mortgage loans for which defendant MARK STEVEN DIAMOND actually offered the loans and took the applications, and caused Harbor Financial Group to submit these fraudulent loan applications to lenders.

14. It was further part of the scheme that, after the IDFPR revoked Harbor Financial Group's residential mortgage license, defendant GARY THOMAS BOHN signed loan applications falsely representing defendant BOHN to be the loan originator of reverse mortgage loans for which defendant MARK STEVEN DIAMOND actually offered the loans and took the applications, and caused Mortgage Brokerage B to submit these fraudulent loan applications to lenders.

15.     It was further part of the scheme that defendant MARK STEVEN DIAMOND caused the reverse mortgage counseling to be conducted over the telephone and then participated in the counseling by coaching or posing as the elderly homeowner or causing others to pose as the elderly homeowner in order to make it appear that reverse mortgage counseling had been completed in instances in which the homeowner did not want a reverse mortgage loan or could not understand the terms of a reverse mortgage loan.

16.     It was further part of the scheme that, to prevent the homeowners from understanding the nature of the transaction and the amount of the loan, defendant MARK STEVEN DIAMOND fraudulently circumvented the court order permanently enjoining defendant DIAMOND from conducting any loan closing and requiring an independent settlement agent to conduct the loan closing for loans defendant DIAMOND brokered.  Defendant DIAMOND accomplished this with the assistance of Co-Schemer C who had direct knowledge of the permanent injunction, represented defendant DIAMOND and defendant DIAMOND's business entities, was paid by defendant DIAMOND and thus was not an independent settlement agent, but nevertheless assisted defendant DIAMOND in performing in-home closings at which the homeowners signed the loan documents for loans defendant DIAMOND brokered. In this way, defendant DIAMOND continued to control the closings and caused certain homeowners to execute reverse mortgage loan documents, despite the fact that they were disabled or otherwise unable to understand the reverse mortgage loan documents.

17.     It was further part of the scheme that defendants MARK STEVEN DIAMOND, MATTHEW FEFFERMAN and GARY THOMAS BOHN fraudulently caused reverse mortgage lenders to make reverse mortgage loans by making false representations to the reverse mortgage

lenders, including that the loan applications had been taken by a licensed loan originator, that the purpose of the loan was for leisure, that the homeowners were knowingly applying for a reverse mortgage and that the homeowners had obtained the required reverse mortgage counseling.

18.    It was further part of the scheme that defendants MARK STEVEN DIAMOND, MATTHEW FEFFERMAN and GARY THOMAS BOHN fraudulently obtained mortgage loan proceeds by causing title company representatives, including Co-Schemer Forrest C. Fawcett, to provide loan proceeds checks payable to the homeowner to defendants DIAMOND, CYNTHIA WALLACE or GARY THOMAS BOHN, rather than to the homeowner.

19.    It was further part of the scheme that defendant MARK STEVEN DIAMOND used false representations and deception to cause homeowners to sign loan proceeds checks, often unwittingly, and provide the signed check to defendant DIAMOND.

20.    It was further part of the scheme that defendant MARK STEVEN DIAMOND and Co-Schemer Forrest C. Fawcett falsely represented to a homeowner who did not want the entire loan proceeds to be disbursed to defendant DIAMOND that reverse mortgage loan proceeds would be held in Able Title Company's escrow account. Co-Schemer Fawcett then caused Able Title Company to disburse all of the loan proceeds to defendant DIAMOND.

21.    It was further part of the scheme that, to circumvent HUD rules limiting reverse mortgage lump sum payouts, defendants MARK STEVEN DIAMOND, MATTHEW FEFFERMAN and GARY THOMAS BOHN, falsely represented to the reverse mortgage lenders that defendants DIAMOND and FEFERMAN had already made all of the home repairs and was entitled to be paid directly by the reverse mortgage lender, including by preparing loan applications and other documents falsely representing that URS, Holloway Lumber & Construction or a

fictitious entity was a creditor of the homeowner, filing false liens against the victims' homes, and submitting false payoff letters.

22.     It was further part of the scheme that, after fraudulently obtaining the reverse mortgage loan proceeds, defendants MARK STEVEN DIAMOND and MATTHEW FEFFERMAN performed as little repair work as possible, with the amount and quality of the home repairs defendants DIAMOND and FEFFERMAN performed a function of the extent to which the homeowner or family members complained to defendants DIAMOND and FEFFERMAN or to authorities.

23.     It was further part of the scheme that defendants MARK STEVEN DIAMOND, MATTHEW FEFFERMAN and CYNTHIA WALLACE fraudulently caused homeowners to obtain personal installment or title loans, including by falsifying the loan application to make the unwitting homeowner appear qualified for the loan and by falsely representing that the loan proceeds would be used to benefit the homeowner, such as being used to fund home repairs or as fees for a refinance loan.

24.     It was further part of the scheme that defendant CYNTHIA WALLACE fraudulently obtained and attempted to obtain money from homeowners who had been victimized by or identified through the defendants' home repair and loan fraud scheme by falsely representing that defendant WALLACE would use the victims' funds to pay fees to make the victims eligible for purported HUD and FHA mortgage assistance grants; to obtain refinancing of the victims' home mortgage loans; to correct purported errors in applications submitted by the victims in support of existing reverse mortgage loans; and to pay for home inspections, the victims' existing mortgage loans, building permits and remediating building code violations.

25.     It was further part of the scheme that defendant CYNTHIA WALLACE falsely represented that she was employed by or a representative of HUD, the FHA or a lender, and concealed her true identity by using various aliases, including Shree Box, Regina Johnson, Sherry Rice, Shirley Rivers, Shirley Simmons and Patrice Sutton.

26.     It was further part of the scheme that defendant CYNTHIA WALLACE fraudulently caused victims to provide money directly or indirectly to defendant WALLACE in the form of checks, money orders, cash, gift cards and MoneyGram and Western Union money transfers.

27.     It was further part of the scheme that defendant MARK STEVEN DIAMOND attempted to conceal the proceeds of this fraud by transferring fraud proceeds between and among accounts in the names of OSI and URS and causing checks, including checks payable to cash, to be drawn on accounts in the names of OSI and URS and negotiated at currency exchanges.

28.     It was further part of the scheme that defendants MARK STEVEN DIAMOND and MATTHEW FEFFERMAN attempted to lull complaining homeowners by falsely promising to complete home repairs, returning a portion of the fraud proceeds, and, with respect to defendant DIAMOND, attempting to intimidate at least one complaining homeowner.

29.     It was further part of the scheme that defendants MARK STEVEN DIAMOND, CYNTHIA WALLACE, MATTHEW FEFFERMAN and GARY THOMAS BOHN, together with Co-Schemers C and Forrest C. Fawcett, did misrepresent, conceal, hide, and caused to be misrepresented, concealed, and hidden acts done in furtherance of the scheme and the purposes of those acts.

30.     As a result of the scheme, defendant MARK STEVEN DIAMOND obtained at least approximately $7 million in fraud proceeds.

31.     As a result of the scheme, defendant MATTHEW FEFFERMAN obtained at least approximately $1.2 million in fraud proceeds.

32.     On or about May 4, 2010, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

MARK STEVEN DIAMOND and
CYNTHIA WALLACE,

defendants herein, for the purpose of executing the scheme and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce an interstate wire transfer through the Fedwire Funds Transfer System of approximately $97,391 to fund the reverse mortgage loan of Victims CS and JS;

In violation of Title 18, United States Code, Section 1343.

## **COUNT TWO**

The SPECIAL JULY 2016 GRAND JURY further charges:

1.      Paragraphs 1 through 31 of Count One are reincorporated herein.

2.      On or about September 8, 2010, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

MARK STEVEN DIAMOND and
CYNTHIA WALLACE,

defendants herein, for the purpose of executing the scheme and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce an interstate wire transfer through the Fedwire Funds Transfer System of approximately $26,929 to fund the reverse mortgage loan of Victim LM;

In violation of Title 18, United States Code, Section 1343.

## COUNT THREE

The SPECIAL JULY 2016 GRAND JURY further charges:

1.      Paragraphs 1 through 31 of Count One are reincorporated herein.

2.      On or about January 28, 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

MARK STEVEN DIAMOND and<br>
CYNTHIA WALLACE,

defendants herein, for the purpose of executing the scheme and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce an interstate wire transfer through the Fedwire Funds Transfer System of approximately $95,132 to fund the reverse mortgage loan of Victims BB and DB;

In violation of Title 18, United States Code, Section 1343.

14

## **COUNT FOUR**

The SPECIAL JULY 2016 GRAND JURY further charges:

1.        Paragraphs 1 through 31 of Count One are reincorporated herein.

2.        On or about April 16, 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

MARK STEVEN DIAMOND,

defendant herein, for the purpose of executing the scheme and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce an interstate wire transfer through the Fedwire Funds Transfer System of approximately $117,277 to fund the reverse mortgage loan of Victims CR and AP;

In violation of Title 18, United States Code, Section 1343.

## **COUNT FIVE**

The SPECIAL JULY 2016 GRAND JURY further charges:

1.  Paragraphs 1 through 31 of Count One are reincorporated herein.

2.  On or about September 23, 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

MATTHEW FEFFERMAN and
GARY THOMAS BOHN,

defendants herein, for the purpose of executing the scheme and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce an interstate wire transfer through the Fedwire Funds Transfer System of approximately $84,069.25 to fund the reverse mortgage loan of Victim CJ;

In violation of Title 18, United States Code, Section 1343.

## **COUNT SIX**

The SPECIAL JULY 2016 GRAND JURY further charges:

1.      Paragraphs 1 through 31 of Count One are reincorporated herein.

2.      On or about October 28, 2013, at Chicago Heights, in the Northern District of Illinois, Eastern Division, and elsewhere,

MATTHEW FEFFERMAN and
GARY THOMAS BOHN,

defendants herein, for the purpose of executing the scheme and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce an interstate wire transfer through the Fedwire Funds Transfer System of approximately $50,141.26 to fund the reverse mortgage loan of Victim EP;

In violation of Title 18, United States Code, Section 1343.

17

## COUNT SEVEN

The SPECIAL JULY 2016 GRAND JURY further charges:

1.      Paragraphs 1 through 31 of Count One are reincorporated herein.

2.      On or about December 16, 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

MARK STEVEN DIAMOND,
CYNTHIA WALLACE and
GARY THOMAS BOHN,

defendants herein, for the purpose of executing the scheme and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce an interstate wire transfer through the Fedwire Funds Transfer System of approximately $66,404 to fund the reverse mortgage loan of Victim HS;

In violation of Title 18, United States Code, Section 1343.

18

**COUNT EIGHT**

The SPECIAL JULY 2016 GRAND JURY further charges:

1.      Paragraphs 1 through 31 of Count One are reincorporated herein.

2.      On or about February 14, 2014, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

MARK STEVEN DIAMOND,
CYNTHIA WALLACE and,
GARY THOMAS BOHN,

defendants herein, for the purpose of executing the scheme and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce an interstate wire transfer through the Fedwire Funds Transfer System of approximately $81,518 to fund the reverse mortgage loan of Victim RH;

In violation of Title 18, United States Code, Section 1343.

## **COUNT NINE**

The SPECIAL JULY 2016 GRAND JURY further charges:

1.      Paragraphs 1 through 31 of Count One are reincorporated herein.

2.      On or about March 12, 2014, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

MARK STEVEN DIAMOND,
CYNTHIA WALLACE and
GARY THOMAS BOHN,

defendants herein, for the purpose of executing the scheme and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce an interstate wire transfer through the Fedwire Funds Transfer System of approximately $105,286 to fund the reverse mortgage loan of Victim BD;

In violation of Title 18, United States Code, Section 1343.

20

## **COUNT TEN**

The SPECIAL JULY 2016 GRAND JURY further charges:

1.        Paragraphs 1 through 31 of Count One are reincorporated herein.

2.        On or about May 13, 2014, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

MATTHEW FEFFERMAN and
GARY THOMAS BOHN,

defendants herein, for the purpose of executing the scheme and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce an interstate wire transfer through the Fedwire Funds Transfer System of approximately $61,334.38 to fund the reverse mortgage loan of Victim GR;

In violation of Title 18, United States Code, Section 1343.

## COUNT ELEVEN

The SPECIAL JULY 2016 GRAND JURY further charges:

1.        Paragraphs 1 through 31 of Count One are reincorporated herein.

2.        On or about October 29, 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

MATTHEW FEFFERMAN and
GARY THOMAS BOHN,

defendants herein, for the purpose of executing the scheme and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce an interstate wire transfer through the Fedwire Funds Transfer System of approximately $88,641.22 to fund the reverse mortgage loan of Victim SJ;

In violation of Title 18, United States Code, Section 1343.

## **COUNT TWELVE**

The SPECIAL JULY 2016 GRAND JURY further charges:

1.      Paragraphs 1 through 31 of Count One are reincorporated herein.

2.      On or about February 16, 2015, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

MATTHEW FEFFERMAN and
GARY THOMAS BOHN,

defendants herein, for the purpose of executing the scheme and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce, namely an email message from defendant BOHN in the Northern District of Illinois through a data center in Virginia to a representative of Chicago Title in the Northern District of Illinois forwarding an email message from defendant FEFFERMAN which falsely represented that Holloway Lumber & Construction Company had completed the work at Victim MB's residence;

In violation of Title 18, United States Code, Section 1343.

### **COUNT THIRTEEN**

The SPECIAL JULY 2016 GRAND JURY further charges:

1.      Paragraphs 1 through 31 of Count One are reincorporated herein.

2.      On or about February 20, 2015, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

MATTHEW FEFFERMAN and
GARY THOMAS BOHN,

defendants herein, for the purpose of executing the scheme and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce, namely an email message from a representative of a Cherry Creek Mortgage in the Lakewood, Colorado through a data center in Quincy, Washington to a representative of Chicago Title in the Northern District of Illinois containing funding instructions for Victim MB's reverse mortgage;

In violation of Title 18, United States Code, Section 1343.

24

## **COUNT FOURTEEN**

The SPECIAL JULY 2016 GRAND JURY further charges:

1.     Paragraphs 1 through 31 of Count One are reincorporated herein.

2.     On or about November 30, 2015, at Chicago, in the Northern District of Illinois, Eastern Division,

CYNTHIA WALLACE,

defendant herein, for the purpose of executing the scheme and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce an interstate wire transfer through Western Union of approximately $1,330 from victim BB as a purported fee for a permit and funds advance;

In violation of Title 18, United States Code, Section 1343.

## **COUNT FIFTEEN**

The SPECIAL JULY 2016 GRAND JURY further charges:

1.      Paragraphs 1 through 31 of Count One are reincorporated herein.

2.      On or about December 12, 2015, at Chicago, in the Northern District of Illinois, Eastern Division,

### CYNTHIA WALLACE,

defendant herein, for the purpose of executing the scheme and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce an interstate wire transfer through Western Union of approximately $500 from victim MJ as a purported home inspection fee;

In violation of Title 18, United States Code, Section 1343.

## **COUNT SIXTEEN**

The SPECIAL JULY 2016 GRAND JURY further charges:

On or about January 13, 2016, at Chicago, and elsewhere, in the Northern District of Illinois, Eastern Division,

### CYNTHIA WALLACE,

defendant herein, falsely assumed and pretended to be an officer and employee acting under the authority of the United States, that is, an employee of the Federal Housing Administration, and in such assumed and pretended character demanded from Victim CR approximately $500 in United States Currency;

In violation of Title 18, United States Code, Section 912.

27

## **COUNT SEVENTEEN**

The SPECIAL JULY 2016 GRAND JURY further charges:

On or about January 28, 2016, at Harvey, and elsewhere, in the Northern District of Illinois, Eastern Division,

### CYNTHIA WALLACE,

defendant herein, falsely assumed and pretended to be an officer and employee acting under the authority of the United States, that is, an employee of the Federal Housing Administration, and in such assumed and pretended character demanded from Victim MD approximately $1,500 in United States Currency;

In violation of Title 18, United States Code, Section 912.

28

### FORFEITURE ALLEGATION

The SPECIAL JULY 2016 GRAND JURY further alleges:

1.      Upon conviction of an offense in violation of Title 18, United States Code, Section 1343, affecting a financial institution, as set forth in this Second Superseding Indictment, defendants shall forfeit to the United States of America any property which constitutes and is derived from proceeds obtained directly and indirectly as a result of the offense, as provided in Title 18, United States Code, Section 982(a)(2)(A).

2.      The property to be forfeited includes, but is not limited to:

a.      Defendant MARK STEVEN DIAMOND, a personal money judgment in the amount of approximately $7 million; and

b.      Defendant MATTHEW FEFFERMAN, a personal money judgment in the amount of approximately $1.2 million.

3.      If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code Section 853(p).

A TRUE BILL:

_____

FOREPERSON

_____
ACTING UNITED STATES ATTORNEY

29